[Civ. No. 45592. Second Dist., Div. One. Oct. 23, 1975.]

LEONARD VERNON, Plaintiff and Respondent, v.
DREXEL BURNHAM & CO. INCORPORATED,
Defendant and Appellant.

## COUNSEL

Stephens, Jones, La Fever & Smith, R. Wicks Stephens II, Eugene W. Bell, Martin L. Mandel and Lawrence D. Lewis for Defendant and Appellant.

Rich & Ezer and Mitchel J. Ezer for Plaintiff and Respondent.

## OPINION

**HANSON, J.—**

### THE CASE

On November 19, 1973, Attorneys Richard P. Rich and Mitchel J. Ezer "on behalf of themselves and all other persons similarly situated," as plaintiffs and attorneys of record for plaintiff-respondent, filed an action entitled, "Complaint Class Action for Fraud and Deceit; Money Had and Received; Usury" (superior court case No. CA-000084).[1] Named as one of the defendants was Drexel Burnham & Co., Incorporated, formerly known as Burnham & Co., Inc., a corporation, appellant herein (hereinafter DREXEL BURNHAM), along with 24 other corporations and 500 Does. The action sought to include as plaintiffs in the class "those persons who have purchased securities from the

---

[1]We have, on our own motion, pursuant to rule 12(a), California Rules of Court, augmented the record with the superior court file (No. 000084) and reviewed the same in its entirety.

defendants *on margin* during the appropriate limitations period immediately preceding the filing of this complaint, at least 100,000 persons." (Italics added.) The complaint alleged that the named plaintiffs Rich and Ezer were damaged in the sum of $266.82, the sum equal to the difference between the "true interest charge" (i.e., interest computed at the points or fractions over prime quoted by defendants to the members of the class) and compounded interest actually charged by defendants and alleged interest overcharges to the class in excess of $1,000,000.

The term "margin account" was described in the complaint as a "customer's account with a stockbroker through which purchases of securities on margin" are made; i.e., the purchase of securities under a financial arrangement with the stockbroker pursuant to which part of the purchase price of the securities is paid by the purchaser, with the balance (the "margin") being collateralized by the securities purchased and financed by the broker to whom the purchaser-borrower pays interest for the amount financed.

The complaint alleged that defendants represented that the interest charges on the class members' balances would be a certain number of points or fractions over "prime," the "prime" or "call rate" being the interest rate at which brokers borrow money from banks in New York City; that the defendants determined interest charges at intervals ranging from 1 to 35 days and added said interest charge to the previously unpaid balance and charged interest on the balance as increased by the interest being charged which was greater than the quoted points or fractions over prime (compounded interest), resulting in actual interest charges greater than the quoted rates.

The trial court sustained demurrers, with leave to amend as to the original complaint, on the ground that the plaintiff attorneys lacked standing to sue as they were customers of only one of the 25 defendant brokers and could sue as representatives of a class composed of the customers of the brokerage house which they patronized, but not of other brokers engaged in alleged parallel conduct.

On April 4, 1974, plaintiff Attorneys Rich and Ezer filed an amended complaint, adding as a party plaintiff, in addition to their names, "Leonard Vernon, on behalf of himself and all other persons similarly situated." The named defendants were Dupont Walston Incorporated, formerly known as Walston & Co., Inc., a corporation, of which plaintiffs Rich and Ezer were customers, and DREXEL BURNHAM, with which

Leonard Vernon (hereinafter VERNON) had a margin account. Subsequently Dupont Walston went through bankruptcy leaving plaintiff VERNON, with an individual claim of about $200, as a titular plaintiff and DREXEL BURNHAM as the sole remaining defendant.

On May 1, 1974, DREXEL BURNHAM filed a petition seeking a court order compelling arbitration as to plaintiff VERNON pursuant to an arbitration clause[2] contained in a "Margin Account Agreement" signed by VERNON on February 8, 1972.

On August 3, 1974, the court entered its findings of fact and conclusions of law determining, in pertinent part, that VERNON instituted this class action without first requesting or electing arbitration of the controversy with DREXEL BURNHAM; that DREXEL BURNHAM properly exercised its election in favor of arbitration; that neither VERNON nor DREXEL BURNHAM has alleged or proved that the other purported members of the class represented by VERNON entered into or were subject to the same or similar agreements; that the arbitration clause is enforceable and binding upon VERNON with respect to his individual controversy with DREXEL BURNHAM; that DREXEL BURNHAM's petition to arbitrate is directed solely to the controversy between VERNON and DREXEL BURNHAM and does not seek to arbitrate the claims of the purported class; that an order compelling VERNON to arbitrate his controversy solely with DREXEL BURNHAM would disqualify him as a representative plaintiff in a class action and deprive the alleged class of its representative; and that "[w]hile the policy of the law is in favor of arbitration, it is also the policy of the law that class actions shall not be subverted by depriving the class of its representative, and in a case such as this the two policies clash. The policy which should prevail is the one against subversion of class actions."

---

[2] "16. Any controversy between you and the undersigned arising out of or relating to my account, to transactions with or for me or to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, Inc., as the undersigned may elect. If the undersigned does not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then the undersigned authorizes you to make such election in behalf of the undersigned. Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction."

The order of August 3, 1974, denying petition to order arbitration was issued without prejudice to renewal upon a showing (1) that every member of the class consisting of all persons who have purchased securities from DREXEL BURNHAM on margin since November 19, 1969 are bound by agreements containing a provision requiring them to arbitrate any dispute arising out of or related to their securities margin account with DREXEL BURNHAM; (2) that the class is subject to division into subclasses, some of which are bound by agreements containing a provision requiring the members of the subclass to arbitrate any dispute arising out of or related to their securities margin account with DREXEL BURNHAM; and (3) that proceedings to divide the class into subclasses for such purpose shall be undertaken in accordance with the Class Action Manual of the court.

Defendant DREXEL BURNHAM appeals from the above order denying its petition for arbitration as to VERNON only.[3]

### ISSUES

On appeal defendant DREXEL BURNHAM contends that the court below, having found a valid agreement to arbitrate, erred in denying its petition to compel arbitration solely as to VERNON and argues he (VERNON) is disqualified to prosecute a class action because he is not a member of the class he purports to represent and cannot resort to a class action to avoid arbitration.

Plaintiff-respondent VERNON asserts that the arbitration clause is an unenforceable contract of adhesion; but in the event it is held to be enforceable, he contends that he does not lack standing to sue since the class cannot be deprived of its representative.

As to appellant's assertion that respondent is attempting to use the class action device to avoid arbitration, counsel for respondent VERNON during oral argument on appeal stated that: "Mr. Vernon is a titular plaintiff. His individual claim I have estimated out at about $200, and I think even counsel will concede that I have not fought him all the way here and will continue to fight him in order to avoid arbitration in a $200 case. What we are interested in is the class action. . . . The interest in this case is the interest of counsel in prosecuting a class action for the possible ultimate recovery of attorney fees out of a fund that's created by a wrong that's been done by the stockbrokers to the public."

---

[3]Although there is some doubt as to whether the order is appealable, we elect to treat it as appealable.

VERNON urges that to permit DREXEL BURNHAM to arbitrate VERNON's claim alone would result in "a predatory picking off of the representative plaintiff."

DISCUSSION

I

The court below found that the arbitration clause was enforceable and was not rendered invalid by reason of the doctrine of adhesion. On appeal plaintiff-respondent VERNON contends that the doctrine of adhesion contracts invalidates the arbitration clause and during oral argument his counsel cited *Akin* v. *Business Title Corp.,* 264 Cal.App.2d 153 [70 Cal.Rptr. 287], and *Gunderson* v. *Superior Court,* 46 Cal.App.3d 138 [120 Cal.Rptr. 35], in support of this contention, both of which are factually distinguishable. *Akin* involved an exculpatory clause in an escrow agreement intended to insulate the escrow company from its own ordinary negligence. In *Gunderson,* a medical malpractice action, the reviewing court ordered issuance of a peremptory writ of mandate directing the trial court to vacate the order to arbitrate and to enter an order denying defendants' petition predicated on a waiver of the arbitration clause contained in a form signed by plaintiff mother of a minor child when she brought the child to defendant medical clinic for treatment, and did not reach plaintiff's contention that the arbitration agreement was invalid and unenforceable.

■ Where arbitration is not mandated by statute, but is a matter of contract, it is the role of the court to determine whether a party resisting arbitration has agreed to arbitrate. (*Retail Clerks Union* v. *Thriftimart, Inc.* (1963) 59 Cal.2d 421, 425-427 [30 Cal.Rptr. 12, 380 P.2d 652]; *Unimart* v. *Superior Court* (1969) 1 Cal.App.3d 1039, 1045 [82 Cal.Rptr. 249].)

■ We hold that no basis exists in the present case for employment of the doctrine of adhesion contracts to avoid arbitration and that the court below properly found that the arbitration clause is enforceable and binding on VERNON for the following reasons:

*First,* the document in question, in large bold type, is entitled "Margin Account Agreement between Burnham & Company, Inc. and Leonard Vernon." Although the agreement was prepared by the appellant company, it is in letter form commencing, "To: Burnham & Company,

Inc. [¶] Gentlemen: [¶] In consideration of your accepting one or more accounts of the undersigned . . . and your agreeing to act as brokers for the undersigned in the purchase or sale of securities, the undersigned agrees as follows:" followed by eighteen (18) numbered paragraphs which are of the same size of print and easily readable, No. 16 containing the arbitration provision (see fn. 2). Respondent VERNON does not contend he did not sign the agreement and his signature appears 13 lines below the arbitration clause on the same page.

Respondent VERNON in his declaration attached to his memorandum in opposition to the petition to order arbitration filed in the court below stated that after he spoke to DREXEL BURNHAM's customer's representative who told him he would send him a "Margin Account Agreement" to sign and return, stated: "I received the Agreement on February 7, 1972; glanced at (but did not read) it; and signed and returned it to Mr. Haft at Burnham on the following day. I did not know that the Agreement contained an arbitration clause, either then or at any time thereafter until my attorneys brought it to my attention a few days ago following their receipt of the Petition to Order Arbitration herein."

VERNON contends that the agreement is not binding because of lack of mutual assent to the arbitration provision since he was unaware of the clause because he did not read it. This contention is not meritorious. He is in effect asking for retrospective unilateral contractual immunity which is contrary to the law of California. To this same contention the court in *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 24 Cal.App.3d 35 [100 Cal.Rptr. 791], said at page 42: " 'But failure to read a contract before signing is not in itself a reason to refuse its enforcement. (*Oakland Bank of Commerce v. Washington* (1970) 6 Cal.App.3d 793, 800 [86 Cal.Rptr. 276].)' (*Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra*, at p. 671; *Federico v. Frick* (1970) 3 Cal.App.3d 872, 875 [84 Cal.Rptr. 74].)" (See also *Currin v. Currin*, 125 Cal.App.2d 644 [271 P.2d 61]; *Larrus v. First National Bank*, 122 Cal.App.2d 884 [266 P.2d 143].)

*Second,* here, as in *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal.App.3d 668 [97 Cal.Rptr. 811] (where the reviewing court reversed an order denying arbitration), there is no showing "that arbitration would be contrary to the reasonable expectations of any party or that any loss or unfair imposition would result." (Page 672.)

*Finally,* the record on appeal reflects that the letter agreement is not a contract of adhesion because it was not, under the circumstances of this

case, offered on a "take it or leave it" basis nor does the subject matter ascend to a public "need" status, which are several fundamental reasons for invoking the doctrine.

## II

■ The court below, after finding the arbitration clause valid and enforceable, held that the policy of the law that class actions shall not be subverted by depriving the class of its representative clashes with the policy of the law in favor of arbitration and that the former policy should prevail. The court for that reason denied DREXEL BURNHAM's petition to arbitrate without prejudice to renewal upon a showing that the members of the class, or a divisible subclass, are bound by the same or similar arbitration provisions.

■ ■■■ The trial court's denial of appellant's petition for an order to arbitrate is based on an incorrect premise[4] and concludes by favoring one policy of the law over another. With this we disagree.

■ We hold that, in the instant case, the policy of law favoring arbitration prevails over the policy of law pertaining to class actions for the following reasons:

*First,* clearly arbitration is a recognized and favored means by which parties expeditiously and efficiently may settle disputes which might otherwise take years to resolve. (*Gunderson* v. *Superior Court,* 46 Cal.App.3d 138, 143 [120 Cal.Rptr. 35]; *Federico* v. *Frick,* 3 Cal.App.3d 872, 876 [84 Cal.Rptr. 74].) There is a strong public policy in favor of arbitration agreements and the law is designed to encourage persons "who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing." (*Utah Const. Co.* v. *Western Pac. Ry. Co.,* 174 Cal. 156, 159 [162 P. 631].) Arbitration provides a means of giving effect to the intention of the parties, easing court congestion, and providing a method more expeditious and less expensive for the resolution of disputes. (*Player* v. *Geo. M. Brewster & Son, Inc.,* 18 Cal.App.3d 526 [96 Cal.Rptr. 149]; *McRae* v.

---

[4]The incorrect premise is that if arbitration was ordered solely as between the parties that would disqualify VERNON as the representative of the class. We hold that if VERNON did proceed alone to arbitration it would not mechanically render him unfit to represent a class or subclass of customers of DREXEL BURNHAM similarly situated. The determination whether or not VERNON can fairly and adequately protect that class rests in the sound discretion of the trial court (see *La Sala* v. *American Sav. & Loan Assn.,* 5 Cal.3d 864, 871 [97 Cal.Rptr. 849, 489 P.2d 1113]), although, of course, VERNON may be disqualified to act as a representative plaintiff to subclasses of customers of DREXEL BURNHAM, if any, where the arbitration clause is not a factor. (See *Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.,* 37 Cal.App.3d 193 [112 Cal.Rptr. 144].)

*Superior Court,* 221 Cal.App.2d 166 [34 Cal.Rptr. 346, 98 A.L.R.2d 1239].)

*Second,* there is perhaps no higher public policy than to uphold and give effect to contracts validly entered into and legally permissible in subject matter. The arbitration provision in the instant case is an integral part of a valid and enforceable contract. The sanctity of valid contractual agreements in a free society, such as ours, is of paramount importance and is rooted in both the United States and California Constitutions, which predate and outweigh the body of law on class actions as presently evolving.

*Finally,* the substantive law of contractual agreement takes precedence over the class action, which is merely a procedural device for consolidating matters properly before the court. "Class actions are provided only as a means to enforce substantive law. Altering the substantive law to accommodate procedure would be to confuse the means with the ends—to sacrifice the goal for the going." (*City of San Jose* v. *Superior Court,* 12 Cal.3d 447, 462 [115 Cal.Rptr. 797, 525 P.2d 701].)

■ A class action cannot be used to subvert an otherwise enforceable agreement to arbitrate contained in a valid contract merely because other individuals, who might qualify as members of a class, were subject to the same provision. (*Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 20 Cal.App.3d 668; *Ware* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 24 Cal.App.3d 35.) "If the agreement is valid, it is valid as to all members of the class. It would be inappropriate to allow respondent and the other members of the class he claims to represent to evade the terms of the agreement simply by bringing their action together as a 'class' rather than as individuals." (*Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 20 Cal.App.3d at p. 672.)

### DISPOSITION

The order denying arbitration without prejudice is reversed. The matter is remanded with directions to vacate the order denying the petition to order arbitration and to enter an order granting the petition.[5]

Wood, P. J., and Thompson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 14, 1976. Mosk, J., was of the opinion that the petition should be granted.

---

[5]Due to the present posture of the case at bench we do not address ourselves to nor intend to reach the issue as to the maintainability of the class action itself. (See fn. 4, *ante.*)