[No. B085025. Second Dist., Div. Six. Nov. 20, 1995.]

SARA BEN-ZVI, Plaintiff and Appellant, v.
EDMAR COMPANY et al., Defendants and Respondents.

**COUNSEL**

Anik & Heiberg, Kathryn A. Heiberg and Ellen S. Szeto for Plaintiff and Appellant.

Jeffrey Held and Alan E. Wisotsky for Defendants and Respondents.

**OPINION**

**YEGAN, J.**—Appellant Sara Ben-Zvi was the exclusive distributor in Israel of embroidery thread and other products manufactured by respondent Edmar Company, a business located in Ventura County and owned by respondents Edson and Maria Freitas. Edmar terminated its contract with appellant when it learned that she had moved from Israel to the United States.

The trial court, sitting without a jury, entered judgment in favor of Edmar because it found that the parties "contemplated and intended" appellant would remain in Israel throughout the term of the contract and that her move to the United States provided "sufficient cause" for termination.

Appellant contends the trial court erred when it implied a contract term requiring her to reside in Israel. Edmar argues the trial court correctly found that appellant abandoned the agency by moving to the United States, failing to personally perform any services for Edmar, and "infuriating" appellant's agent in Israel. We reverse.

*Facts*

Appellant's husband Jakov negotiated the distribution contract with Edmar on her behalf. He told respondents that appellant intended to teach embroidery classes using their products and that she wanted an exclusive contract which would continue indefinitely if she achieved a minimum of $1,500 sales per year. Freitas told Jakov that this was acceptable only if the minimum was $5,000 per year. Jakov agreed, the bargain was struck and appellant, as well as Freitas, signed the contract on January 1, 1988.

Paragraph three of the contract provides, in pertinent part that appellant ". . . shall remain the sole distributor of all Edmar Co. embroidery goods

within the State of Israel on condition that no less than $5,000 (five thousand dollars) of supplies . . . be purchased each calendar year." Paragraph four provides in pertinent part: "Edmar Co. shall not sell to nor conduct business deals involving their embroidery supplies with any other individual, supplier, and/or company whose intention is to use, sell, ordistribute those good in Israel." The contract contains no express residency requirement and does not discuss the circumstances under which it may be terminated.

Appellant hired Shmaya Ron, the owner of a hobby shop in Israel, to coordinate the importation and distribution of Edmar products. Ron received orders from other hobby stores in Israel and sent the orders to Jakov, who sent them to Edmar. Edmar shipped the products directly to Ron, and Ron sent Edmar payment for the goods shipped. Ron testified that he could handle the entire process himself and that appellant was of little or no assistance to him. Appellant testified that the embroidery classes she taught created a "perpetual demand" for the products. Sales of Edmar products increased each year of the contract and always exceeded the $5,000 minimum.

In August 1992, appellant and her husband moved to the United States. Ron claimed that they left Israel without telling him how to contact them. When Edmar learned about the move from Ron, it terminated the contract with appellant. Edmar continues to sell its products in Israel, using Ron as its distributor.

### Trial Court Ruling

The trial court, sitting without a jury, found that the contract could be terminated only for cause and was to be renewed annually if appellant sold at least $5,000 of Edmar products. It also found that "the parties contemplated and intended that [appellant] would . . . develop a market for defendants' products and maintain a physical presence in Israel to accomplish same. . . . Under all the circumstances, [appellant's] departure from Israel, even accepting her claim that she intended to divide her time between the two countries, provided sufficient cause for defendants' termination of the agency relationship." The trial court entered judgment for Edmar.

### Contract Interpretation

■ Contract interpretation presents a question of law which this court determines independently. (*Golden West Baseball Co.* v. *City of Anaheim* (1994) 25 Cal.App.4th 11, 22 [31 Cal.Rptr.2d 378]; *Vaillette* v. *Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 686 [23 Cal.Rptr.2d 807].)

A contract must be interpreted to give effect to the mutual, expressed intention of the parties. Where the parties have reduced their agreement to writing, their mutual intention is to be determined, whenever possible, from the language of the writing alone. (Civ. Code, §§ 1636, 1639; *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 821-822 [274 Cal.Rptr. 820, 799 P.2d 1253].) ■ We may not "create for the parties a contract which they did not make, and . . . cannot insert in the contract language which one of the parties now wishes were there." (*Levi Strauss & Co.* v. *Aetna Casualty & Surety Co.* (1986) 184 Cal.App.3d 1479, 1486 [229 Cal.Rptr. 434].)

### Implied Terms

■ Under limited circumstances, the court may find that a contract includes an implied term or covenant. "To effectuate the intent of the parties, implied covenants will be found if after examining the contract as a whole it is so obvious that the parties had no reason to state the covenant, the implication arises from the language of the agreement, and there is a legal necessity." (*College Block* v. *Atlantic Richfield Co.* (1988) 206 Cal.App.3d 1376, 1380 [254 Cal.Rptr. 179].)

■ A contract term will be implied only where the term is "indispensable to effectuate the expressed intention of the parties." (*Lippman* v. *Sears, Roebuck & Co.* (1955) 44 Cal.2d 136, 145 [280 P.2d 775].) A term can only be implied ". . . upon grounds of obvious necessity." (*Addiego* v. *Hill* (1965) 238 Cal.App.2d 842, 847 [48 Cal.Rptr. 240]; see also *Cousins Inv. Co.* v. *Hastings Clothing Co.* (1941) 45 Cal.App.2d 141, 149 [113 P.2d 878].) Residence in Israel does not meet these tests. Appellant found and employed Ron through her efforts alone. That she picked an outstanding agent should be applauded by respondents. Rather than applause she was "fired." In this modern global marketplace, with travel by jet airplane and advanced communication capabilities, including telephone and facsimile transmissions, the perhaps once-required resident-agent in a foreign country may now be an anachronism.

Here, the contract contains no express term requiring appellant to reside in Israel throughout its term or allowing Edmar to terminate the contract if she left Israel. There was no testimony or documentary evidence at trial indicating that the parties ever discussed the residency issue or that they considered this term too obvious to write down. (*College Block* v. *Atlantic Richfield Co.*, *supra*, 206 Cal.App.3d at p. 1380.)

Nor is there any language in the contract from which a residency requirement may be implied. To the contrary, the contract imposes only one

condition for its continued existence: "no less than $5,000 (five thousand dollars) of supplies . . . [must] be purchased each calendar year." There is no evidence that appellant's continuous presence in Israel was indispensable to effectuate the purpose of the contract. (*Lippman* v. *Sears, Roebuck & Co.*, *supra*, 44 Cal.2d 136.) If, as Edmar argues, Ron was solely responsible for all Israeli sales, appellant's presence in the country could hardly be said to be an "obvious necessity" to the contract's performance. (*Addiego* v. *Hill*, *supra*, 238 Cal.App.2d 842; *Cousins Inv. Co.* v. *Hastings Clothing Co.*, *supra*, 45 Cal.App.2d 141.).

In sum, the contract between appellant and Edmar did not explicitly or implicitly require her to reside in Israel. The trial court erred when it concluded that her move to the United States gave Edmar sufficient cause to terminate the contract.

### Abandonment

■ Respondents contend that, even if the contract did not contain a residency requirement, Edmar had sufficient grounds to terminate the contract because appellant "renounced" or "abandoned" the agency by leaving Israel. We disagree.

An agency may be terminated by "[t]he agent's renunciation" of it. (Civ. Code, § 2355, subd. (d).) There is no evidence here that appellant renounced her agency. In fact, the evidence demonstrates that after she left Israel and before Edmar terminated the contract, appellant's husband requested that Edmar mail her checks to her United States address. He testified that he did tell Ron how to contact them in the United States. This conduct is inconsistent with an intent to renounce the agency. (*Meadows* v. *Lee* (1985) 175 Cal.App.3d 475, 483 [221 Cal.Rptr. 22].)

Respondents also contend that appellant "abandoned" the agency by failing to personally perform any services for Edmar, moving, and "infuriating" Ron. "A mutual abandonment of an agency terminates the relationship between the parties." (*Preszler* v. *Dudley* (1957) 153 Cal.App.2d 120, 124 [314 P.2d 138].) Abandonment occurs, however, only where both contracting parties agree "that the contract is terminated and of no further force and effect." (*C. Norman Peterson Co.* v. *Container Corp. of America* (1985) 172 Cal.App.3d 628, 640 [218 Cal.Rptr. 592].) For the reasons stated above, there is no evidence that appellant agreed to terminate the contract.

Nor does appellant's alleged failure personally to perform services amount to an abandonment. The contract does not require her to personally engage in

any marketing or distribution activities. It only requires her to sell $5,000 of Edmar products each year. She met that requirement by hiring Ron to do so and he did.

## Purpose of Contract Law

■ Finally, respondents contend that, as a small business, Edmar must have the "capacity to adjust to changing developments" in order to survive, and that appellant's lackluster performance, her treatment of Ron and her move "constituted the changed conditions triggering the need for at-will adjustment of the parties' relationship."

It might be desirable for a small business to have this kind of flexibility and Edmar certainly could have bargained for a more flexible contract. It chose, however, to make a contract that severely limited the circumstances under which appellant could be dismissed. While Edmar always had the power to terminate the agency (Civ. Code, § 2356), it did not have the right to do so without liability. (*Woolley* v. *Embassy Suites, Inc.* (1991) 227 Cal.App.3d 1520, 1529-1530 [278 Cal.Rptr. 719].)

The purpose of the law of contracts is to protect the reasonable expectations of the parties. Here the parties' reasonable expectation was to make money. Appellant reasonably expected to be paid a commission for the sale of $5,000 or more worth of embroidery products in Israel every year. Respondents reasonably expected to sell at least that much worth of embroidery products in Israel. Had appellant sold $1 million worth of embroidery products in Israel every year without residing there, respondents' reasonable expectations would have been met. Had she sold the minimum amount in Israel while residing there, respondents' reasonable expectations would have been met. The case boils down to the all-too-typical situation where the manufacturer tried to cut out the middleman to maximize profit after the middleman has developed the market. There is, however, a price to be paid for breach of contract.

## Damages on Retrial

The parties agree that a contract containing no express termination date is "terminable at will by any party upon reasonable notice after . . . a reasonable time has elapsed." (*Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union* (1968) 69 Cal.2d 713, 727-728 [73 Cal.Rptr. 213, 447 P.2d 325].) The trial court did not reach the issue of damages. Appellant urges us to find that a reasonable term for this contract is 15 years and that she is entitled to recover $82,200 in damages. We decline the invitation. The trial

court is charged with the responsibility for the factfinding necessary to arrive at these determinations.

## Conclusion

For the reasons stated above, the judgment of the trial court is reversed. The cause is remanded with instructions to vacate the judgment entered in favor of respondents, enter judgment in favor of appellant, and determine damages. Costs to appellant.

Stone (S. J.), P. J., and Gilbert, J., concurred.

Respondents' petition for review by the Supreme Court was denied February 14, 1996.