Craig COMB and Roberta Toher, on behalf of themselves and all others similarly situated and on behalf of the general public of the United States, Plaintiffs,

v.

PAYPAL, INC., Defendant.

Jeffrey Resnick, on behalf of himself and all others similarly situated and on behalf of the general public of the United States, Plaintiffs,

v.

PayPal, Inc., Defendant.

Nos. C–02–1227 JF (PVT), C–02–2777 JF (PVT).

United States District Court, N.D. California, San Jose Division.

Aug. 30, 2002.

Gary A. Peterson, Jacoby & Meyers, Oakland, CA, Patricia I. Avery, Wolf Popper, LLP, New York City, for Jeffrey Resnick.

David J. Brown, Michael Shawn Connell, Brobeck, Phleger & Harrison, LLP, San Francisco, CA, David S. Harris, Brobeck, Phleger & Harrison, LLP, East Palo Alto,

CA, Molly Moriarty Lane, Stephanie Johnson, Brobeck, Phleger & Harrison, Palo Alto, CA, for PayPal, Inc.

Ann Saponara, Daniel C. Girard, Eric H. Gibbs, James A.N. Smith, Rosemary M. Rivas, Girard, Gibbs & De Bartolomeo, LLP, San Francisco, CA, for Mark Fawcett, Craig Comb, and Roberta Toher.

## ORDER DENYING MOTIONS TO COMPEL INDIVIDUAL ARBITRATION

FOGEL, District Judge.

Plaintiffs seek injunctive relief and related remedies on behalf of a purported nationwide class for alleged violations of state and federal law by Defendant PayPal, Inc. ("PayPal"). PayPal moves to compel individual arbitration pursuant to the arbitration clause contained in its standard User Agreement and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* The Court has read and considered the moving, responding and supplemental papers as well as the oral arguments presented by counsel on August 12, 2002. For the reasons set forth below, the motions will be denied.[1]

## I. BACKGROUND

### A. Customer Complaints

PayPal is an online payment service that allows a business or private individual to send and receive payments via the Internet. A PayPal account holder sends money by informing Paypal of the intended recipient's e-mail address and the amount to be sent and by designating a funding source such as a credit card, bank account or separate PayPal account. PayPal accesses the funds and immediately makes them available to the intended recipient. If an intended recipient does not have a PayPal account, the recipient must open an account to access the payment by following a link that is included in the payment notification e-mail. PayPal generates revenues from transaction fees and the interest it derives from holding funds until they are sent.

As of January 1, 2001, approximately 10,000 account holders had registered with PayPal. PayPal thereafter experienced a sudden and dramatic increase in its popularity, attracting one million customers over the next five months and 10.6 million accounts (of which 8.5 million were held by private individuals) by September 30, 2001. Currently, PayPal provides services to twelve million accounts, and approximately 18,000 new accounts are opened each day. Plaintiffs allege that while PayPal has experienced a seven-fold increase in revenues and a thirteen-fold increase in users, it only has doubled the number of service representatives available to address customer concerns.

Plaintiffs contend that because PayPal's customer base has exceeded its operational capacity, PayPal has been and continues to be unable to maintain and manage accounts in the manner required by applicable state and federal legislation. Plaintiffs allege in particular that when PayPal investigates a customer's complaint of fraud, it freezes the customer's access to his or her account until the investigation is completed, but at the same time keeps the account open for deposits, a practice which

1. On March 29, 2002, the Court determined that the above entitled cases are related pursuant to Civil L.R. 3–12(b).

allows PayPal to derive economic benefit from the deposits while preventing customers from accessing even undisputed funds while the investigation is pending. Plaintiffs further allege that PayPal does not provide a toll-free customer service telephone number, does not effectively publish the customer service telephone number it does provide, requires customers to report erroneous transactions by e-mail while not providing a specific e-mail address for that purpose, requires customers to provide numerous and burdensome personal documents before it undertakes an investigation, responds to e-mail inquiries with form letters, refuses to provide details or explanations with respect to its investigations, and provides no procedure by which a customer can appeal the results of an investigation. Plaintiffs also allege that when customers *are* able to contact PayPal representatives, the representatives are combative and rude, refuse to answer specific questions, hang up in the middle of phone calls, provide "canned" responses to individualized problems, require customers to fax information while providing inoperative fax numbers, and refuse to allow customers to speak to managers.

Newspaper articles have reported that disgruntled customers who have been unable to contact anyone at PayPal to resolve their disputes have created their own website providing consumers with difficult-to-find customer service numbers and reporting their own frustrations with PayPal's service. According to these accounts, PayPal has a backlog of over 100,000 unanswered customer complaints, a fact that has led the Better Business Bureau to revoke its seal of approval. Plaintiffs allege that PayPal profits from its alleged acts and omissions because customers either abandon their efforts to recover their money or, in cases in which funds actually are returned, because it retains the interest collected on the funds it has held during the investigation process.[2]

### 1. Craig Comb

Plaintiff Craig Comb ("Comb"), who is not a PayPal customer, alleges the following: On February 15, 2002, without his knowledge, consent or authorization, PayPal removed the sums of $110.00 and $450.00 from his bank account. Comb allegedly had difficulty contacting PayPal with respect to the erroneous transfer and finally reached a PayPal representative on February 18, 2002 to report the alleged error. PayPal acknowledged the error and returned the entire $560.00 to Comb's account on February 25, 2002.

PayPal's transfers, however, caused Comb's bank account to have insufficient funds, and the bank charged Comb $208.50 for failing to maintain his required balance. Comb contacted PayPal and requested reimbursement for the insufficient fund penalty and any interest his funds accrued while in PayPal's possession. PayPal allegedly refused to pay either amount, disputing Comb's figures but failing to provide Comb its own figures or documentation of its investigation.

### 2. Roberta Toher

Plaintiff Roberta Toher ("Toher") alleges the following: Toher opened a PayPal

---

**2.** PayPal objects to portions of the declarations and supporting exhibits submitted by Plaintiffs Toher and Resnick as vague and ambiguous, irrelevant, improper opinion or conclusion, lacking foundation, and violating the Best Evidence Rule. These objections are overruled.

account sometime in 2000. PayPal failed to provide her with the name, address, and telephone number of a person she should notify in the event of an unauthorized electronic transfer. On February 24, 2002, Toher discovered that PayPal had transferred funds from her checking account to four individuals without her knowledge, consent or authorization. Toher had difficulty locating any telephone number for contacting PayPal. Once she found a telephone number, which was not toll-free, she was placed on hold for a lengthy period of time, and no one answered her call. Toher then located PayPal's e-mail address and reported the error by e-mail.

On or about February 25, 2002, PayPal responded to Toher by e-mail and instructed her to report the erroneous transaction by sending her complaint to either of two e-mail addresses it provided. Toher sent her complaint to one e-mail address, from which it was returned undeliverable, and then to the other address. She also attempted again to contact PayPal by telephone. After Toher again was placed on hold for a lengthy period of time, a PayPal representative instructed her to change her password and report the error by telephone to a different department. Toher called that department's telephone number and spoke with a service representative who informed her that he had verified that the transaction had not been initiated by Toher and that PayPal would send Toher a letter explaining how to report the transaction in writing. During this time, the recipients who erroneously had received the funds e-mailed Toher and inquired as to the reason for the payment.

On or about February 27, 2002, before her complaint had been investigated or resolved, PayPal informed Toher that it intended to take money from her checking account because her bank had declined a different, unrelated transaction. Toher called PayPal and explained that she had filed a claim with respect to the erroneous withdrawal and instructed PayPal to stop removing funds from the checking account. PayPal explained that there was nothing it could do to stop the latter transaction, and Toher was forced to pay a $27.00 fee to her bank to decline all subsequent electronic transactions related to PayPal. Toher contacted PayPal to request for a second time the letter explaining how to report her original claim. PayPal subsequently informed Toher that it would begin processing her claim once she completed and returned a notarized affidavit by mail.

On March 6, 2002, PayPal sent Toher a series of e-mails explaining that because her bank had declined its attempted transfers, PayPal intended to transfer funds from her credit card account. Toher in turn closed and reopened her credit card account to prevent PayPal from accessing her funds. As of the date the instant suit was filed, PayPal had not acknowledged that Toher had reported an erroneous withdrawal or that an error had occurred, nor had it undertaken any investigation with respect to Toher's complaint.[3]

### 3. Jeffrey Resnick

Plaintiff Jeffrey Resnick ("Resnick") alleges the following: Resnick registered an

---

**3.** Although she does not so allege in her complaint, Toher claims in her responding papers that PayPal still holds $136.48 of her money and refuses to return it on the basis that she failed to cooperate with PayPal's investigation. PayPal disputes Toher's allegations and provides the results of its investigation, asserting that Toher's only legitimate claim could be for the return of the $27.00 she elected to pay to her bank to prevent further electronic transfers.

account with PayPal and linked his e-mail address *resnickjeff@hotmail.com* (with two "f"s) to that account. He used the account to sell comic books on eBay, an Internet auction service. On January 29, 2002, a third party appropriated Resnick's PayPal user name and password and linked an e-mail account *resnickjefff@hotmail.com* (with three "f"s) to Resnick's PayPal account. The third party sold two Apple Computers on eBay, and the buyers deposited their payment into the fraudulent account. When the buyers did not receive their product, they filed a complaint with PayPal, which without notice or explanation then restricted Resnick's legitimate account.

In late January or early February 2002, Resnick learned that his account had been restricted and contacted PayPal to inquire as to the reason. Once informed of the circumstances, Resnick explained that he had not sold the computers and stated that because the fraudulent account's e-mail address contained three "f"s rather than two, someone must have appropriated his account information. At the time he filed the instant suit, although more than forty-five days had elapsed since he informed PayPal of its error, he had not received any information or documentation with respect to the status of PayPal's investiga-

tion, and PayPal had not unrestricted or credited his account.[4]

## B. User Agreement

PayPal customers open an account by completing an online application for a personal, premier, or business account. A prospective customer clicks a box at the bottom of the application page that reads, "[you] have read and agree to the User Agreement and [PayPal's] privacy policy." A link to the text of the User Agreement is located at the bottom of the application. The link need not be opened for the application to be processed. The User Agreement is lengthy, consisting of twenty-five printed pages and eleven sections, each containing a number of subparagraphs enumerating the parties' respective obligations and duties.[5]

PayPal admonishes every customer to read the User Agreement carefully, informs him or her that the Agreement forms a binding contract, and advises the customer to retain a copy of the User Agreement.[6] The User Agreement is a "clickwrap contract," formed when the customer "click[s] 'I Agree,' 'I Accept,' or by submitting payment information through the Service...." User Agreement, ¶ 2.[7]

The User Agreement contains the following arbitration clause:

4. In its moving papers, PayPal rebuts Resnick's allegations of innocence and provides the results of its investigation.

5. For purposes of the present motions and unless otherwise noted, all references are to the June 27, 2002 version of the User Agreement submitted with PayPal's moving papers.

6. The User Agreement begins with the following statement:

   This User Agreement ("Agreement" or "User Agreement") is a contract between you and PayPal, Inc. and applies to your use of the PayPal™ payment service and

   any related products and services (collectively the "Service"). This Agreement affects your rights and you should read it carefully. We encourage you to print the Agreement or copy it to your computer's hard drive for your reference.

7. ¶ 2 provides that:

   [Y]ou agree to the terms and conditions of this Agreement, the PayPal Privacy Policy, and any documents incorporated by reference. You further agree that this User Agreement forms a legally binding contract between you and PayPal, and that this Agreement constitutes "a writing signed by

**Arbitration.** Any controversy or claim arising out of or relating to this Agreement or the provision of Services shall be settled by binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association. Any such controversy or claim shall be arbitrated on an individual basis, and shall not be consolidated in any arbitration with any claim or controversy of any other party. The arbitration shall be conducted in Santa Clara County, California, and judgment on the arbitration award may be entered in any court having jurisdiction thereof. Either you or PayPal may seek any interim or preliminary relief from a court of competent jurisdiction in Santa Clara County, California necessary to protect the rights or property of you or PayPal, Inc. (or its agents, suppliers, and subcontractors) pending the completion of arbitration.

User Agreement, Section II(19).

## II. DISCUSSION

The FAA was enacted to overcome longstanding judicial reluctance to enforce agreements to arbitrate. *Bradley v. Harris Research, Inc.*, 275 F.3d 884, 888 (9th Cir.2001). It applies to all written contracts involving interstate or foreign commerce and provides in relevant part that arbitration agreements contained within such contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA creates a body of federal substantive law of arbitrability, enforceable in both state and federal courts and pre-empting any state laws or policies to the contrary." *Ticknor v. Choice Hotels Int'l, Inc.*, 265

F.3d 931, 936 (9th Cir.2001) (citations and internal quotation omitted). As a result, state laws hostile to arbitration agreements have been held invalid on the ground that such laws frustrate congressional intent to place arbitration agreements on the same footing as other contracts. *Bradley*, 275 F.3d at 889.

State law is not entirely displaced from FAA analysis, however. It is undisputed that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). Here, the User Agreement is "governed by and interpreted under the laws of the state of California . . . [as] applied to agreements entered into and to be performed entirely within California by California residents." User Agreement, Section II(18). Because there is no dispute that the contract at issue in this case involves interstate commerce, this Court's role thus is limited to determining whether under California law (1) a valid agreement to arbitrate exists and, if so, (2) whether the agreement encompasses the dispute at issue. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.2000). If both of these requirements are satisfied, the FAA requires this Court to enforce the subject arbitration clause in accordance with the terms of the User Agreement. *Id.*

### A. Agreement to Arbitrate

Even though California has a strong policy favoring arbitration, "[i]t is beyond cavil that arbitration is a matter of contract and a party cannot be required to submit

You" under any applicable law or regula-

tion.

to arbitration any dispute which he has not agreed so to submit." *Ajida Tech., Inc. v. Roos Instruments, Inc.*, 87 Cal.App.4th 534, 541, 104 Cal.Rptr.2d 686 (2001) (citations and internal quotation omitted). The Court must interpret the parties' written agreement so as to give effect to the parties' mutual intention. *Ben–Zvi v. Edmar Co.*, 40 Cal.App.4th 468, 473, 47 Cal. Rptr.2d 12 (1995); *Floystrup v. City of Berkeley Rent Stabilization Bd.*, 219 Cal. App.3d 1309, 1317, 268 Cal.Rptr. 898 (1990). If possible, the Court will determine the parties' intention solely from the language of the agreement itself. *Ben–Zvi*, 40 Cal.App.4th at 473, 47 Cal.Rptr.2d 12. Extrinsic evidence is admissible, however, if the offered evidence is relevant to prove the meaning of ambiguous language and such interpretation is reasonable in light of all the facts, circumstances, and conditions surrounding the execution of the agreement. *Oakland–Alameda County Coliseum v. Oakland Raiders, Ltd.*, 197 Cal.App.3d 1049, 1057–58, 243 Cal.Rptr. 300 (1988). "Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence." *Rosenthal v. Great W. Fin. Securities Corp.*, 14 Cal.4th 394, 413, 58 Cal.Rptr.2d 875, 926 P.2d 1061 (1996).

It is undisputed that Comb's claims are not subject to arbitration. With respect to Toher and Resnick, PayPal failed to submit with its original moving papers copies of the agreements into which Toher and Resnick allegedly entered, arguing that circumstantial evidence sufficiently demonstrates assent by these Plaintiffs to the User Agreement PayPal currently offers its new customers. At oral argument, PayPal reiterated its claim that Resnick entered into an agreement containing the exact arbitration clause found in Section II(19) of the current User Agreement, but it conceded that the version of the User Agreement entered into by Toher did not contain the subject arbitration clause. PayPal nonetheless argued that Toher is bound to the *current* User Agreement, including the arbitration clause, because the version of the User Agreement Toher did accept binds her to any subsequent revisions to the User Agreement. After the hearing, PayPal submitted supplemental declarations and exhibits ("the Supplemental Material") from PayPal's Senior Manager for Online Communications and Marketing Damon Billian.[8] The Supplemental Material provides an electronic record of the dates Toher and Resnick opened their respective accounts, a copy of the version of the User Agreement PayPal claims was in effect at the time the respective accounts were opened, and copies of five subsequent versions of the User Agreement.

Although an electronic record constitutes sufficient evidence that the parties have entered into a binding agreement, the

---

**8.** Plaintiffs object strenuously to the Court's consideration of the Supplemental Material. They argue that PayPal filed these documents in violation of this Court's Local Rules, and that the documents demonstrate that PayPal's original claim that Toher agreed to arbitration was false. The Court agrees that the filing did not comply with the Local Rules, and one reasonably may infer from the circumstances that PayPal's counsel at the very least were negligent in their original representations to the Court. The Court does not take such irregularities lightly and will not hesitate to impose sanctions should this situation arise again. Nonetheless, because it concludes that the interests of justice are best served by reaching Plaintiffs' unconscionability arguments, the Court has given counsel the benefit of the doubt and has considered the Supplemental Material.

applicable statutes require production of *a record* that the parties have entered into an agreement and evidence of the terms and conditions contained in such agreement. Plaintiffs argue that the Supplemental Material contains no evidence of any electronic or actual record of Plaintiffs' assent to the purported agreements. The Court agrees that PayPal has made a weak showing, but for purposes of the instant motion, it will assume without deciding that the circumstantial evidence is sufficient to demonstrate that Toher and Resnick entered into agreements with PayPal.[9]

### B. Unconscionability

■ Plaintiffs argue that even if they did enter into a version of the User Agreement, the User Agreement and in particular its arbitration clause are unconscionable. Unconscionability is a defense applicable to contracts generally and thus may be raised in defense to an arbitration provision. *Blake v. Ecker,* 93 Cal.App.4th 728, 741, 113 Cal.Rptr.2d 422 (2001). Unconscionability has both procedural and substantive components. *Id.* at 742, 113 Cal.Rptr.2d 422. The procedural component is satisfied by the existence of unequal bargaining positions and hidden terms common in the context of adhesion contracts. *Id.* The substantive component is satisfied by overly harsh or one-sided results that "shock the conscience." *Id.* The two elements operate on a sliding scale such that the more significant one is, the less significant the other need be. *Id.*

at 743, 113 Cal.Rptr.2d 422. A claim of unconscionability cannot be determined merely by examining the face of the contract; there must be an inquiry into the circumstances under which the contract was executed, its purpose, and effect. *Id.*

#### 1. Procedural Unconscionability

A contract or clause is procedurally unconscionable if it is a contract of adhesion. *Flores v. Transamerica HomeFirst, Inc.,* 93 Cal.App.4th 846, 853, 113 Cal.Rptr.2d 376 (2001). A contract of adhesion, in turn, is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz v. Foundation Health Psychcare Serv.,* 24 Cal.4th 83, 113, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000) (citations and internal quotation omitted). Although PayPal does not dispute that the agreement and arbitration clause at issue here meet this definition, it asserts that the instant contract is not procedurally unconscionable because it does not concern essential items such as food or clothing and because Plaintiffs had meaningful alternative sources for the subject services.

Relying upon *Dean Witter Reynolds, Inc. v. Superior Court,* 211 Cal.App.3d 758, 769, 259 Cal.Rptr. 789 (1989), PayPal argues that the availability of alternative sources is enough to defeat a showing of procedural unconscionability. In *Dean Witter,* however, the California Court of Appeal noted that the party asserting unconscionability was "a sophisticated inves-

---

9. PayPal argues that because the User Agreement entered into by Toher provides that "this Agreement is subject to change at any time without notice," she assented to the arbitration clause that PayPal inserted into a subsequent version of the User Agreement. In light of the disposition of the motion, the

Court need not decide whether such a provision ever could result in a binding agreement to arbitrate. As discussed below, however, PayPal's unilateral and apparently unfettered right to revise the User Agreement does bear on the question of whether the User Agreement is substantively unconscionable.

tor" and that "[t]he record establishe[d] without conflict that other financial institutions offered competing IRA's which lacked the challenged provision." *Id.* at 771, 259 Cal.Rptr. 789. In this case, the amount of the average transaction is $55.00, the vast majority of PayPal customers are private individuals who are not "sophisticated," and there is at least a factual dispute as to whether PayPal's competitors offer their services without requiring customers to enter into arbitration agreements.[10] The *Dean Witter* court explicitly limited its holding, indicating that a claim of procedural unconscionability cannot be defeated merely by "*any* showing of competition in the marketplace as to the desired goods and services....*" *Id.* at 772, 259 Cal.Rptr. 789 (emphasis in original). PayPal cites no authority extending *Dean Witter* to circumstances analogous to those presented here. *Cf. Armendariz,* 24 Cal.4th at 113, 99 Cal.Rptr.2d 745, 6 P.3d 669 (rejecting argument that contract between employer and employee was not adhesive because employer demonstrated existence of alternative sources of employment that were not conditioned on the acceptance of an arbitration clause). *See also, Szetela v. Discover Bank,* 97 Cal.App.4th 1094, 1100, 118 Cal.Rptr.2d 862 (2002) (finding availability of substitute goods not "the relevant test for unconscionability" in dispute between unsophisticated consumer and large financial institution). The Court concludes that the User Agreement at issue here satisfies the criteria for procedural unconscionability under California law.

### 2. Substantive Unconscionability

■ Even if instant agreement is procedurally unconscionable, it may nonetheless be enforceable if the substantive terms are reasonable. *See Craig v. Brown & Root, Inc.,* 84 Cal.App.4th 416, 422–23, 100 Cal.Rptr.2d 818 (2000) (finding contract of adhesion to arbitrate disputes enforceable). The Court's principal substantive concerns in the present case are a lack of mutuality in the User Agreement and the practical effects of the arbitration clause with respect to consolidation of claims, the costs of arbitration, and venue.

#### a. Mutuality

■ Substantive unconscionability has been found in many cases based upon arbitration provisions requiring arbitration of the weaker party's claims but permitting a choice of forums for the stronger party. *See, e.g., Ticknor,* 265 F.3d at 940–41; *Mercuro v. Superior Court,* 96 Cal.App.4th 167, 176, 116 Cal.Rptr.2d 671 (2002). Considered in isolation, the arbitration clause at issue here appears to permit a mutuality of remedies, providing that "[e]ither you or PayPal may seek any interim or preliminary relief from a court of competent jurisdiction in Santa Clara County, California necessary to protect the rights or property of you or PayPal, Inc. (or its agents, suppliers, and subcontractors) pending the completion of arbitration." User Agreement, Section II(19). Section V(3) of the User Agreement, however, provides that in the event of a dispute, PayPal "at its sole discretion" may restrict accounts, withhold funds, undertake its own investigation of a customer's financial records, close accounts, and procure ownership of all funds in dispute unless and until the customer is "later determined to be enti-

---

**10.** The record also demonstrates that individuals who are not account holders must register with the service as a precondition to accessing funds that an account holder sends to them. Although none of the named Plaintiffs opened an account by such means, the Court notes that such individuals would not have any meaningful alternatives available to them.

tled to the funds in dispute." PayPal alone makes the final decision with respect to a dispute.[11] Finally, as noted earlier, the User Agreement "is subject to change by PayPal without prior notice (unless prior notice is required by law), by posting of the revised Agreement on the PayPal website." [12]

A contract may provide a "margin of safety" that provides the party with superior bargaining strength protection for which it has a legitimate commercial need. "However, unless the 'business realities' that create the special need for such an advantage are explained in the contract itself, ... it must be factually established." *Stirlen v. Supercuts, Inc.,* 51 Cal.App.4th 1519, 1536, 60 Cal.Rptr.2d 138 (1997).

When a contract is alleged to be unconscionable, "the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination." Cal. Civ.Code § 1670.5. The statutory scheme reflects "legislative recognition that a claim of unconscionability often cannot be determined merely by examining the face of the contract, but will require inquiry into its setting, purpose, and effect." *Stirlen,* 51 Cal.App.4th at 1536, 60 Cal.Rptr.2d 138 (citations and internal quotations omitted).

PayPal argues that the User Agreement does not lack mutuality because nothing in the agreement precludes a customer from using the court system to seek any relief related to a restricted account pending the

**11.** Section V(3) provides:

PayPal, at its sole discretion, reserves the right to close an account at any time for any reason, including but not limited to a violation of this Agreement, upon notice to the User and payment to the User of any unrestricted funds held in custody. PayPal, at its sole discretion, also reserves the right to periodically retrieve and review a business and / or consumer credit report for any account, and reserves the right to close an account based on information obtained during this credit review process.

PayPal, at its sole discretion, also reserves the right to restrict withdrawals from an account for any one of the events listed below. If the dispute covers only a specific transaction, we will only restrict funds related to that particular transaction. If your account is restricted, you will be notified by e-mail and requested to provide information relevant to your account. PayPal will investigate the matter promptly. If the investigation is in your favor, we will unrestrict your account. If the investigation is not in your favor, PayPal may return funds to the sender and unrestrict the remainder of your account, continue the restriction for up to 180 days as to funds necessary to protect PayPal against the risk of reversals, or may close your account by giving you notice and mailing a check for any funds in your account (minus funds that are in dis-

pute) to the address that you have provided. If you are later determined to be entitled to the funds in dispute, PayPal will make an additional payment of those funds to you. Any of the following events may lead to a restriction of your account ....[omitting list of nineteen provisions that include "Receipt of potentially fraudulent funds," "Refusal to cooperate in an investigation," "Opening multiple Personal accounts," and "Logging in from a country not included on PayPal's permitted countries list."]....[¶] PayPal will use reasonable efforts to investigate accounts that are subject to a restriction and to reach a final decision promptly.

**12.** ¶ 2 provides:

This Agreement is subject to change by PayPal without prior notice (unless prior notice is required by law), by posting of the revised Agreement on the PayPal website. Descriptions of material amendments to this Agreement will be posted in advance on the PayPal website in the "Policy Updates" section that is displayed to you when you log in to your account. You can also set your Preferences to receive e-mail notification of all policy updates. You may review the current Agreement prior to initiating a transaction at any time at our User Agreement page.

outcome of an arbitration proceeding. However, Plaintiffs present evidence that PayPal has frozen customer accounts and retained funds that it alone determined were subject to dispute without notice to the named Plaintiffs. The User Agreement expressly authorizes PayPal to engage in such conduct unilaterally. While in theory a customer may seek provisional relief in the courts, including presumably an order to unfreeze an account, the cost of doing so would be prohibitive in relation to the amounts typically in dispute. For all practical purposes, a customer may resolve disputes only after PayPal has had control of the disputed funds for an indefinite period of time. Although PayPal alone may amend the User Agreement without notice or negotiation, a customer is bound to any and all such amendments for the duration of the customer's relationship with PayPal. PayPal has not shown that "business realities" justify such one-sidedness. *See, e.g., Flores*, 93 Cal.App.4th at 854, 113 Cal.Rptr.2d 376 (finding lack of mutuality when debtor must arbitrate any controversy arising out of a loan whereas the lender may proceed by judicial or non-judicial foreclosure, by self-help remedies such as setoff, and by injunctive relief to obtain appointment of a receiver); *Stirlen*, 51 Cal.App.4th at 1540, 60 Cal.Rptr.2d 138 (finding that a mandatory arbitration requirement realistically applies "primarily if not exclusively" to claims filed by the employer in light of employer's failure to identify any provision of the contract or statute likely to give rise to a claim to which it would be compelled to submit to arbitration).

### b. Prohibition against Consolidation of Claims

The subject arbitration clause expressly prohibits PayPal customers from consoli-

dating their claims. Relying upon *Vernon v. Drexel Burnham & Co.*, 52 Cal.App.3d 706, 716, 125 Cal.Rptr. 147 (1975), PayPal argues that such a prohibition cannot render an agreement to arbitrate substantively unconscionable. The arbitration clause in *Vernon*, however, did not preclude consolidation of claims *per se*, and whatever relevance *Vernon* may have in this case is overshadowed by the much more recent decision of the California Court of Appeal in *Szetela v. Discover Bank*, 97 Cal. App.4th at 1094, 118 Cal.Rptr.2d 862. As is this case here, the arbitration agreement at issue in *Szetela* categorically prohibited individual customers from joining or consolidating claims in arbitration. The court determined that a large credit card company could not enforce the prohibition with respect to consumer claims against it because in practice most claims likely would involve consumers seeking the return of small amounts of money, and any remedy obtained by the few consumers who would not be dissuaded from pursuing their rights would pertain only to those consumers without collateral estoppel effect. *Id.* at 1101, 118 Cal.Rptr.2d 862. The court concluded that such circumstances raise "[t]he potential for millions of customers to be overcharged small amounts without an effective method of redress . . . ." *Id.*

PayPal argues that because federal cases applying the FAA have enforced arbitration clauses containing such prohibitions on collective actions,[13] *Szetela* is irrelevant to the present proceedings. In the Ninth Circuit, however, while the FAA preempts any legislation "specifically aimed at arbitration agreements," "[i]n all situations where arbitration provisions are placed on the same footing as other con-

---

13. *See, e.g., Champ v. Siegel Trading Co.*, 55 F.3d 269, 274–75 (7th Cir.1995); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

tracts, state law applies." *Ticknor,* 265 F.3d at 941 (citation and internal quotation omitted). Thus, while California's consumer protection statutes cannot prevent enforcement under the FAA of a prohibition on collective actions as such, a federal court properly may consider whether such a prohibition in combination with other provisions and circumstances renders an agreement substantively unconscionable as a matter of state law.

### c. Costs of Arbitration

Plaintiffs claim that the cost of an individual arbitration under the User Agreement is likely to exceed $5,000 and submit declarations stating that such arbitration would be cost-prohibitive for them.[14] PayPal disputes Plaintiffs' calculation of costs, contending that because any arbitration in practice would proceed under the consumer rules of the American Arbitration Association ("AAA"), a customer's only expense would be a filing fee of approximately $125.00.

The arbitration clause itself expressly undercuts PayPal's assertion. It states in pertinent part that "[a]ny controversy or claim arising out of or relating to this Agreement or the provision of Services shall be settled by binding arbitration in accordance with the *commercial* arbitration rules of the American Arbitration Association." (emphasis added).[15] Further, because the clause is silent as to who bears the cost of arbitration, under California law each party is required to pay a *pro rata* share of the "expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit." Cal.Code Civ. P. § 1284.2.

Unlike the plaintiff in *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) who claimed that the unknown and unidentified risk of excessive fees should be sufficient to defeat a valid arbitration clause, the named Plaintiffs here, none of whose individual claims exceeds $310.00, have shown that the costs each of them is likely to incur in commercial arbitration likely would exceed those involved in bringing a collective action. By allowing for prohibitive arbitration fees and precluding joinder of claims (which would make each individual customer's participation in arbitration more economical), PayPal appears to be attempting to insulate itself contractually from any meaningful challenge to its alleged practices. Under these circumstances, the Court concludes that this aspect of the arbitration clause is so harsh as to be substantively unconscionable. *See, e.g., Armendariz,* 24 Cal.4th at 113, 99 Cal.Rptr.2d 745, 6 P.3d 669.

### d. Venue

The User Agreement requires that any arbitration take place in Santa Clara County, California. PayPal argues that this venue provision is not unconscionable

---

**14.** PayPal objects to the declaration of Ann Saponora as exceeding the page limitations applicable to Plaintiffs' opposing papers and object to various portions of the declaration as vague and ambiguous, irrelevant, lacking foundation, hearsay, improper opinion, conclusion, speculation, violating the Best Evidence Rule, and improper use of case law and argument in a declaration. The objections are overruled. *See also, supra,* n. 2.

**15.** The AAA rules, offered in evidence by PayPal at oral argument, plainly contain distinct procedures for "commercial" and "consumer" arbitrations.

because forum selection clauses in general are *prima facie* valid, courts have found similar forum selection clauses in arbitration clauses reasonable, and the named Plaintiffs themselves elected to litigate in this Court, thereby undercutting any claim that the contractual forum is burdensome or inconvenient for them.

Although it is true that forum selection clauses generally are presumed *prima facie* valid, a forum selection clause may be unconscionable if the "place or manner" in which arbitration is to occur is unreasonable taking into account "the respective circumstances of the parties." *Bolter v. Superior Court,* 87 Cal.App.4th 900, 909, 104 Cal.Rptr.2d 888 (2001). The record in this case shows that PayPal serves millions of customers across the United States and that the amount of the average transaction through PayPal is $55.00. Although PayPal cites to unpublished or out-of-state authority holding that such facts do not warrant a finding of unconscionability, PayPal cites no California authority holding that it is reasonable for individual consumers from throughout the country to travel to one locale to arbitrate claims involving such minimal sums. Limiting venue to PayPal's backyard appears to be yet one more means by which the arbitration clause serves to shield PayPal from liability instead of providing a neutral forum in which to arbitrate disputes.[16] *See, e.g., Bolter,* 87 Cal.App.4th at 909, 104 Cal.Rptr.2d 888 (finding that enforcement of forum selection clause providing that claims are arbitrated exclusively in Utah would be cost prohibitive in light of fact that the potential claimants located around the country would be required to retain counsel familiar with Utah law).[17]

## III. DISPOSITION

Having considered the terms of the User Agreement generally and the arbitration clause in particular, as well as the totality of the circumstances, the Court concludes that the User Agreement and arbitration clause are substantively unconscionable under California law and that arbitration cannot be compelled herein. Good cause therefor appearing, IT IS HEREBY ORDERED that the motions to compel individual arbitration are DENIED.

---

16. As it does with respect to the costs of arbitration, PayPal contends that the AAA consumer rules mitigate any unfairness by permitting telephonic participation in arbitration hearings. As already discussed, however, the User Agreement on its face provides that the AAA commercial rules apply.

17. Plaintiffs also contend that the subject arbitration clause is unconscionable because it requires them to waive statutory rights. The Court does not find this contention persuasive, and in any event it need not reach it.