[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et al., and present before this Court is Defendants' motion to stay proceedings and compel arbitration. Plaintiffs have timely filed an objection.
 Facts and Travel
Mary DeFontes (Defontes) and Nicholas Long (Long) (collectively Plaintiffs) purport to be representatives of a class of persons who purchased computers from one of the Dell entities (Dell) named as Defendants in this suit. Dell is a Texas Corporation shipping computers from either Texas or Tennessee throughout the fifty states. Plaintiffs allege two causes of action, (1) violation of the Consumer Protection Act via unfair or deceptive acts and practices, and (2) common law negligence. The basis for each claim rests on the proposition that Dell was overcharging its customer by collecting a tax on both service contracts and transportation costs. Plaintiffs claim that no tax is owing on such contracts.
Specifically, DeFontes purchased a computer and an optional service contract from Dell Catalog Sales. Pursuant to the sales agreement DeFontes was charged $950.51 of which $13.51 was characterized as "Tax." Long purchased a computer and service contract from Dell Marketing for $3,037.73 of which $198.73 was characterized as "Tax." The service contract purchased by DeFontes was to be performed by a third-party contractor, BancTec; the service contract purchased by Long was to be satisfied by Dell. QualXServ was not the service contractor for either DeFontes or Long.
Any and all tax charged to Plaintiffs by Dell was either paid to the State of Rhode Island directly or to third-party service providers who in turn remitted it to the State of Rhode Island Dell did not retain any of the collected tax.
Generally, and in the case at bar, Dell imposes certain terms and conditions on sales made by it. These terms and conditions are presented in a document entitled "Terms and Conditions Agreement." The relevant provisions of that document are as follows:
 "TERMS AND CONDITIONS AGREEMENT
 PLEASE READ THIS DOCUMENT CAREFULLY! IT CONTAINS VERY IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND OBLIGATIONS, AS WELL AS LIMITATIONS AND EXCLUSIONS THAT MAY APPLY TO YOU. THIS DOCUMENT CONTAINS A DISPUTE RESOLUTION CLAUSE.
 This Agreement contains the terms and conditions that apply to purchases by Home, Home Office, and Small Business customers from the Dell entity named on the invoice ("Dell"). By accepting delivery of the computer systems, related products, and/or services and support, and/or other products described on that invoice. [sic] You ("Customer") agrees [sic] to be bound by and accepts [sic] these terms and conditions. . . . These terms and conditions are subject to change without prior written notice at any time, in Dell's sole discretion. . . .
 2. Governing law. THIS AGREEMENT AND ANY SALES THEREUNDER SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO CONFLICTS OF LAWS RULES. . . .
 13. Binding Arbitration. ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, COMMONLAW, INTENTIONAL TORT AND EQUITABLE CLAIMS) AGAINST DELL, its agents, employees, successors, assigns or affiliates. . . . arising from or relating to this Agreement, its interpretation, or the breach, termination or validity thereof, the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third parties who are not signatories to this Agreement), Dell's advertising, or any related purchase SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect. . . . The arbitration will be limited solely to the dispute or controversy between Customer and Dell. Any award of the arbitrator(s) shall be final and binding on each of the parties, and may be entered as a judgment in any court of competent jurisdiction. Information may be obtained and claims may be filed with the NAF at P.O. Box 50191, Minneapolis, MN 55405. . . ." (Defendants' Exhibit C.)
The Terms and Conditions Agreement or its contents are made available or provided to customers on at least three occasions. Customers and potential customers may view it as a hyperlink on the bottom of Dell's website. Once an order has been processed, Dell encloses a copy of the terms with an acknowledgement of the order sent to the customer. Finally, Dell encloses a copy with the computer when it is shipped. Central to this dispute is the clause found in paragraph 13 which mandates binding arbitration to be administered by the National Arbitration Forum (NAF).
Under the NAF Code of Procedure, arbitration fees are calculated based on the claim amount. A fee of $25 is charged to any claimant whose claim is less than $2,500; the claimant is not responsible for any other fees if the arbitration is limited to written submissions. However, if the claimant wishes to participate in the arbitration in-person, the claimant must pay an additional $75 fee. The prevailing party in any NAF arbitration may recover all fees and costs. The Rhode Island Superior Court filing fee charged to Plaintiffs in the instant action was $160.
 Application of Law
The Federal Arbitration Act, 9 U.S.C. § 1 et al. (FAA), governs contracts containing arbitration clauses involving interstate commerce. Allied-Bruce Terminix Co. v. Dobson, 513 U.S. 265, 269 (1995). When applicable, the FAA ordinarily preempts state law. Id. However, "when deciding whether the parties agreed to arbitrate a certain matter, courts should apply ordinary state law principles governing the formation of contracts." In reMedia Arts Group, Inc. 2003 Tex. App. LEXIS 8185, 9. Because a determination regarding the validity of the arbitration provision is central to the resolution of the instant motion and state law will be applied to make that determination, it is necessary to initially establish which state law is controlling. Accordingly, this Court must decide whether to abide by the choice of law clause contained in Paragraph 2 of the Terms and Conditions Agreement which calls for the application of Texas law or whether local law, that is to say Rhode Island Law, would be more suitable.
Plaintiffs contend that the arbitration provision is unenforceable based on principals of unconscionability. Among other things, Plaintiffs contend that the contract, and therefore the arbitration provision, is both procedurally and substantively unconscionable. Specifically, Plaintiffs argue that the process was flawed because they had absolutely no power to negotiate the terms, and further, Plaintiffs contend the language of the contract fails to bind defendants, creating an unenforceable illusory promise. As Plaintiffs have cited contractual language beyond the arbitration provision, it would initially seem that the entire contract was in question. Accordingly, this Court typically would analyze the conflict of laws problem as if the choice of law clause were not included in the contract. The District Court of Illinois followed this approach in New MedicoAssociates, Inc. v. Kleinhenz, 1991 WL 105600. Specifically, the court stated:
 "[c]learly, to give effect to the choice of law provision in the agreement before deciding whether the agreement is valid or not would be illogical. Thus, this court must decide which state's law would apply in the absence of any agreement between the parties, and apply that law in order to determine whether the agreement is enforceable." Id.
However, based on the United States Supreme Court opinion inPrima Paint Corp. v. Flood and Conklin, Mfg. Co., 388 U.S. 395, 403-404 (1967), this Court is precluded from resolving questions of contract validity and therefore, need not engage in the conflicts of law analysis which would accompany such a claim.
The Prima Paint Court held that where a contract contains an arbitration clause, courts are precluded from entertaining questions concerning the validity of the contract generally, rather this issue must be left to the arbitrator. Id. That court explained that issues appropriate for judicial determination are issues specifically relating to the validity of the arbitration provision. Id. The court expressly indicated in its decision that by so holding it was both adhering to the plain meaning of the statute and respecting Congress's intention to ensure speedy resolutions contemplated by contracting parties.
This reasoning has been consistently upheld and employed by both Texas and Rhode Island courts. The United States Court of Appeals for the Fifth Circuit addressed this issue in a case in which it was alleged that the contract in question was an unenforceable contract of adhesion. Dillard v. Merrill Lynch,961 F.2d 1148, 1154 (5th Cir. 1992). Specifically the court recounted the holding of the Prima Paint Court stating the following:
 "[u]nder Supreme Court precedent, a party must challenge the `making of the agreement to arbitrate' itself in order to create a jury-triable issue. If the party makes allegations regarding the contract as a whole — e.g., that the brokerage contract is a contract of adhesion — that issue must go to arbitration. In most cases in which a customer seeks to avoid arbitration by alleging that the contract is one of adhesion, he fails to allege specifically that the arbitration clause is adhesive." Id. (citations omitted).
Furthermore, the United States District Court for the District of Rhode Island reached the same conclusion in A.T. Cross Co. v.Royal Selangor(s) PYE, LTD. 217 F. Supp.2d 229, 233 (D.R.I. 2002). The Cross Court recognized that:
 "[t]he question of whether there is a valid contract differs from whether the parties must take their dispute to arbitration. Because the arbitration clause is severable from the rest of the contract, an arbitrator can decide if a contract is invalid or unenforceable. The federal court may only decide `issues relating to the making and performance of the agreement to arbitrate.' The Court severs the arbitration clause from the rest of the contract to consider if it is binding on the parties. For example, when a party contends that the contract was procured fraudulently, but there is no claim that fraud was involved in the arbitration agreement itself, the Court should uphold the arbitration agreement and allow arbitration to proceed." Id.
Clearly, this Court is bound by the Supreme Courts decision inPrima Paint and is consequently prohibited from entertaining claims which attack the validity of the contract generally. Thus, this Court initially will limit its examination to those claims which pertain to the validity of the arbitration provision.
Recognizing that this Court's is precluded from examining the validity of the contract, this Court will analyze the conflicts of law issue in light of the choice of law clause. In deciding questions involving conflicts of law where choice of law provisions are present, Rhode Island follows § 187 of the Restatement. Gordon v. Clifford Metal Sales Co., 602 A.2d 535, 538 (R.I. 1992). The Restatement proposes that courts respect the choice of the contracting parties and apply the law chosen by those parties; in this case, the law of Texas, unless (1) there is no reasonable basis for the choice or
 "(2) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of that particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) Conflict of Laws: Contracts § 187 (1971).
The Restatement recognizes that a policy fundamental to a particular state "may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power."Id. Again, in comment g of § 187, the Restatement indicates that courts may consider the relative positions of the contracting parties during negotiations; specifically, following the Restatement approach, a court may factor into its analysis whether a contract was "drafted unilaterally" and is one of adhesion. Id. at 187 cmt. b. If the court concludes that the application of the choice of law clause "would result in substantial injustice to the adherent," it is appropriate for the court to ignore the parties' choice of law and apply the test outlined in § 188 of the Restatement. Id. Section 188 suggests that in determining which law to apply, courts should consider five factors; namely, "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) Conflict of Laws: Contracts § 188 (1971). However, where the application of the law of the forum state would simply result in a different conclusion, the choice of law clause should not be disregarded.
Clearly, the fact that Dell is incorporated in Texas provides a reasonable basis for choosing to apply the laws of the state of Texas to the contracts in question. Furthermore, this Court is not persuaded that the second exception to the Restatement Rule could be applied in this case because neither the "materially greater interest" nor the "fundamental policy" requirement is met. Rhode Island does not have a materially greater interest than Texas in the determination of this issue because it, like Texas, is concerned with providing a fair forum for its citizens. In this case, Plaintiffs are all citizens of Rhode Island and Defendant Dell is a citizen of Texas. Moreover, the application of Texas law would not "be contrary to a fundamental policy" of Rhode Island because the application of either law would have similar results. For example, both states embrace the proposition that adhesive contracts are not per se unenforceable. SeeFamiglietti v. Town of Smithfield, 1986 R.I. Super. LEXIS 53, 2 (R.I. Super. 1986). See also In re Media Arts Group, Inc.,
2003 Tex. App. LEXIS 8185, 24.
Accordingly, Texas law will be applied in this case.
 Arbitration Favored under the Law
Under the FAA, an arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."9 U.S.C. § 2. Accordingly, a presumption in favor of arbitration exists, and the party seeking to invalidate the arbitration agreement bears the burden of overcoming the presumption. Cantella Co., Inc.v. Goodwin, 924 S.W.2d 943, 944 (Tex. 1996) (per curiam).
Initially, in order to compel arbitration, a party must establish that the arbitration agreement exists and that the claims asserted are within the scope of the arbitration agreement. Mohamed v. Autonation USA Corp., 89 S.W.3d 830, 837 (Tex. App. 2002). Upon such a showing, the burden then shifts to the plaintiff to show that some defense in law or equity exists which would invalidate the arbitration agreement. Id. If the party in opposition to arbitration fails to meet its burden, "the court must compel arbitration and stay its own proceedings." Inre H.E. Butt Grocery Co. 17 S.W.3d 360, 367 (Tex. App. 2000). (emphasis added). Finally, courts are bound under the law to resolve uncertainties in favor of arbitration. Id.
 Existence of an Arbitration Agreement
"It is well settled that a court may not compel arbitration until it has resolved `the question of the very existence' of the contract embodying the arbitration clause. `Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"Specht v. Netscape Communs. Corp., 306 F.3d 17, 26 (2nd Cir. 2002) (citations omitted). Therefore, any party seeking to compel arbitration must first establish the existence of an arbitration agreement. Autonation, 89 S.W.3d at 837. A critical point in establishing the existence of an agreement is demonstrating the manifestation of assent to the terms of the agreement. Specht, 306 F.3d at 28.
Defendants claim that Plaintiffs manifested their assent to the terms of the contract by failing to return the product within 30 days of receiving the computer. Conversely, Plaintiffs contend that there was no manifestation of assent to the terms because Defendants failed to make acceptance of the terms an express contingency in the agreement.
In Specht, the court had to determine whether consumers assented to the terms of an agreement when they downloaded software from an internet website. Specht, 306 F.3d at 26. In that case, the terms of the licensing agreement were available by a hyperlink at the bottom of the page, below the download button. Such an agreement has become known as a "browsewrap" agreement. It was possible for Plaintiffs to download the software without scrolling down the webpage and seeing the link. Id. at 23. Therefore, Plaintiffs may have downloaded software without knowing that terms would be applied to the purchase, or without reading those terms. Defendant argued that failing to read a contract is no defense to the contract and parties are nevertheless bound by its terms.
Nevertheless, the court concluded that consumers did not assent to the terms of this browsewrap agreement because they were not properly notified of the terms. In explanation, the court stated:
 "`[t]his principle of knowing consent applies with particular force to provisions for arbitration.' Clarity and conspicuousness of arbitration terms are important in securing informed assent. `If a party wishes to bind in writing another to an agreement to arbitrate future disputes, such purpose should be accomplished in a way that each party to the arrangement will fully and clearly comprehend that the agreement to arbitrate exists and binds the parties thereto.'" Id. at 30.
Responding to Defendant's argument, it noted that while "[i]t is true that `[a] party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing.'" But the Court was quick to add: "An exception to this general rule exists when the writing does not appear to be a contract and the terms are not called to the attention of the recipient. In such a case, no contract is formed with respect to the undisclosed term."Id. Accordingly, the court held that these customers had not knowingly consented to the terms and therefore they were not bound thereto.
In the instant case, Plaintiffs were given the opportunity to read the terms and conditions on three separate occasions, one of which was in the form of a browsewrap agreement. Specifically, Plaintiffs could have viewed the terms via a hyperlink, inconspicuously located at the bottom of the webpage. As inSpecht, this was not sufficient to put Plaintiffs on notice of the terms and conditions of the sale of the computer. As a result, the browsewrap agreement found on Dell's webpage cannot bind the parties to the arbitration agreement.
However, courts generally recognize that shrinkwrap agreements, paper agreements enclosed within the packaging of an item, are sufficient to put consumers on inquiry notice of the terms and conditions of a transaction. Id. at 31. The Seventh Circuit found that parties are bound by shrinkwrap agreements when they fail to return a product which according to the agreement serves as acceptance of those terms. ProCD, Inc. v. Zeidenberg,86 F.3d 1447, 1449 (7th Cir. 1996). In that case, Defendant purchased software and the terms and conditions governing the contract between buyer and seller were contained within the package. Id. at 1451. The agreement expressly stated:
 "Please read this license carefully before using the software or accessing the listings contained on the discs. By using the discs and the listings licensed to you, you agree to be bound by the terms of this License. If you do not agree to the terms of this License, promptly return all copies of the software,
listings that may have been exported, the discs and the User Guide to the place where you obtained it." ProCD, Inc. v. Zeidenberg, 908 F. Supp. 640, 644 (W.D.Wisc. 1996) (emphasis added).
For guidance, the court turned to the Uniform Commercial Code, specifically § 2-206(1)(b). Id. Section 2-206(1)(b) explains that "a buyer accepts goods . . . when, after an opportunity to inspect, he fails to make an effective rejection." Id.
Accordingly, the Seventh Circuit found that the seller offered these terms to the buyer, and the buyer accepted those terms and conditions by using the software and failing to return it. Id.
at 1452.
This reasoning has been followed by a number of courts. Recently, the Seventh Circuit reconsidered and affirmed theProCD decision in Hill v. Gateway 2000, Inc., 105 F.3d 1147
(7th Cir. 1997). In that case, the Seventh Circuit found a purchaser of a computer was bound by the terms contained in the package when the purchaser failed to return the computer. Also, the Fifth Circuit found that failure to return a telephone served as acceptance of those terms contained in the box used to package the telephone. OQuin v. Verizon Wireless, 256 F. Supp.2d 512, 517 (M.D.La. 2003).
While on the surface, it would seem that these cases suggest that the shrinkwrap agreement in this case is binding on both parties, the instant case can quickly and easily be distinguished from ProCD. A very significant difference lies in the fact that the agreement in ProCD contained an express disclaimer which indicated that if the customer was unwilling to agree to the terms and conditions as presented, the customer could reject those terms by simply returning the product.
In this case, no such express contingency is included in the terms and conditions agreement. Although, Dell does provide a "total satisfaction policy" whereby the customer may return the computer, this return policy does not mention the customer's ability to return based on their unwillingness to comply with the terms. The underlying reasoning of the Specht decision is particularly poignant to this issue. While the Specht Court reasoned that the binding effect of a shrinkwrap agreement hinged on whether a reasonable person "would have known of the existence of the agreement," Specht, 256 F. Supp.2d at 516, this Court, employing the same logic, finds that the binding effect of the Terms and Conditions Agreement also hinges on whether a reasonable person would have known that return of the product would serve as rejection of those terms. Accordingly, this Court finds that Plaintiffs did not "knowingly consent" to the terms and conditions of the agreement because they were not given sufficient notice of the method to reject those terms. Therefore, Plaintiffs are not bound by the arbitration clause therein. Accordingly, the motion to stay these proceedings and compel arbitration is denied.
Although further analysis is unnecessary, for the sake of completeness, this Court will not end its examination here. Assuming arguendo that Plaintiffs did assent to the terms and conditions provided by Dell, this Court is bound to analyze the scope of the agreement to arbitrate and thereafter defenses to the formation of the arbitration agreement.
 Scope of the Agreement to Arbitrate
Plaintiffs contend that the arbitration agreement does not pertain to Defendants Banctec and QualXServ because of the limiting language of the contract. Specifically, the arbitration clause states that:
 "any claim . . . against Dell, its agents, employees, successors, assigns or affiliates . . . arising from or relating to this Agreement . . ., the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third parties who are not signatories to this Agreement) . . . shall be resolved exclusively and finally by binding arbitration. . . . The arbitration will be limited solely to the dispute or controversy between Customer and Dell." (Plaintiffs' Exhibit C.)
Plaintiffs further assert that "[f]or the purposes of the arbitration clause as drafted by Dell, the term `Dell' is defined as `the Dell entity named on the invoice.'" (Plaintiffs' Memo in Opposition of Stay at 25.) Therefore, Plaintiffs claim that neither Banctec nor QualXServ may invoke the arbitration clause because they are neither Dell as defined by the agreement nor are they one of Dell's "agents, employees, successors, assigns or affiliates." Id.
Plaintiffs accurately restate the finding of the United States Supreme Court that "it is the language of the contract that defines the scope of disputes subject to arbitration. . . . For nothing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002). Moreover, in order to bind a party to an arbitration agreement, that party must have agreed to be bound. See Sapicv. Gov't of Turkm., 2003 U.S. App. LEXIS 18612, 11-12 (5th Cir. 2003). However, a "court should not deny a motion to compel arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." In re Oakwood Mobile Homes,Inc., 1999 Tex. App. LEXIS 8781, 5 (1999).
Specifically, "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." McMillan v. Computer Translation Sys. Support,66 S.W.3d 477, 482 (Tex App. 2001). "Six theories for binding a nonsignatory to an arbitration agreement have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary." Sapic, 2003 U.S. App. LEXIS 18612 at 12. (citations omitted).
In this case, it is uncontroverted that Dell acted as the agent of both QualXServ and Banctec. (Plaintiff's First Amended Complaint ¶ 28.) Specifically, Plaintiffs' complaint states: "[i]n collecting amounts purporting to be a `tax' on the purchase of Optional Service Contracts with third-party providers QualXServ and Banctec, Dell Defendants act as the agents of such third-party providers." Id. Typically, the question as to binding a non-signatory centers around whether an agent is bound by the contract of its principal; generally, courts find that agents are in fact bound by an arbitration agreement. SeeNorth River Ins. Co. v. Transamerica Occidental Life Ins. Co.,
2002 U.S. Dist. LEXIS 10637 (citing, Interbras Cayman Co. v.Orient Victory Shipping Co., 663 F.2d 4, 6-7 (2d Cir. 1981). However, in this case the issue is whether a principal may be bound by the agreements of its agents. This very question was answered in the North River case. In that case, the court held "an undisclosed principal may enforce a contract made for its benefit by an agent even though the signatory to the arbitration clause was unaware of the existence of the principal." Id.
Therefore, without the factual question of agency to determine, it is clear that the principal is bound to an arbitration agreement.
Nevertheless, assuming arguendo that Defendants QualXServ and Banctec are not bound to the contract under an agency theory; Defendants assert that they should be able to enforce the arbitration agreement based on equitable estoppel. It is well settled that, "when a plaintiff that is a signatory to an arbitration agreement sues both signatory and non-signatory defendants based on substantially interdependent and concerted misconduct by all defendants, the non-signatory defendants may enforce the arbitration agreement." Mohamed v. Autonation USACorp., 89 S.W.3d 830, 837 (Tex. App. 2002) (citing, McMillan v.Computer Translation Sys. Support, 66 S.W.3d 477, 482 (Tex App. 2001). In McMillan, the court found that the asserted claims were identical and arose "from the same breach of the settlement agreement, involve[d] the same participants and conduct, and occurred within the same time." As a result, the court found that the plaintiffs were equitably stopped from preventing the enforcement of the arbitration agreement against the non-signatories. Id.
Here, the plaintiffs allege that Dell imposed the tax on the service contracts which were to be performed by non-signatories, QualXServ and Banctec. This claim involves a single factual allegation, that Dell overcharged its customers. Again, this claim arose against both Dell and the non-signatories at the same moment and involved the same conduct. It is clear that this claim is "based on substantially interdependent and concerted misconduct by all defendants" and should therefore fall within the estoppel exception. Accordingly, the third-party service providers, QualXServ and Banktec, are permitted to seek enforcement of the arbitration provision. Having considered the existence and scope of the agreement, the only remaining considerations are the applicable defenses to contract.
 Unconscionability
Unconscionability, a defense to contracts generally, is also grounds to defeat an arbitration agreement; proof thereof overcomes the presumption favoring arbitration. In re H.E.Butt, 17 S.W.3d at 371. Where the factual theory "concerns assent to the benefit of the agreement and focuses on the facts surrounding the bargaining process," procedural unconscionability is at issue. Id. On the other hand, where the arguments "concern the fairness of the benefit agreement," substantive unconscionabilty is at work. Id.
 Procedural Unconscionability Contracts of Adhesion
Under Texas law, a contract of adhesion is one "in which one party has absolutely no bargaining power or ability to change the contract terms." In re Media Arts Group, Inc., 2003 Tex. App. LEXIS 8185, 24. In this case, Dell customers obviously had no ability to influence the contractual language which Dell unilaterally drafted. Without question, an adhesion contract was formed. However, it is well-settled in Texas law that adhesion contracts are not per se unconscionable; rather, a party asserting unconscionability must also present evidence of substantive unconscionability. Id. at 26. See also In re H.E.Butt, 17 S.W.3d at 371.
In the instant case however, Plaintiffs have asserted substantive unconscionability as a defense to contract. Specifically, Plaintiffs argue that the arbitration provision is unenforceable because it both prevents Plaintiffs from asserting their rights as a class and it is illusory. This Court will review these assertions seriatim.
 Substantive Unconscionability Absence of Class Action
Plaintiffs in this case allege that it would be inequitable to enforce the arbitration agreement because enforcement would prevent Plaintiffs from seeking protection in the form of a class action. The Court of Appeals of Texas has addressed this issue inAutonation USA Corp. v. Leroy, 105 S.W.3d 190, 199-200 (Tex. App. 2003). The Autonation court cautioned:
 "[t]his assumes that the right to proceed on a class-wide basis supercedes a contracting party's right to arbitrate under the FAA. However, the primary purpose of the FAA is to overcome courts' refusals to enforce agreements to arbitrate and to ensure that private agreements to arbitrate are enforced according to their terms. The Texas Supreme Court has made it clear that the FAA is part of substantive law of Texas, and has stressed that `procedural devices,' such as Rule 42's provision for class actions, `may not be construed to enlarge or diminish any substantive rights or obligations of any parties to any civil action.' Accordingly, there is no entitlement to proceed as a class action." Id.
at 200.
Hence, this Court finds that the arbitration provision is not substantively unconscionable solely because it precludes the use of a procedural device of litigation, the class action. Therefore, this Court will review the allegation that the contract is illusory.
 Illusory Contracts
"A promise is illusory when it fails to bind the promisor, who retains the option of discontinuing performance." In re C HNews Co., 2003 Tex. App. LEXIS 393, 11. A valid contract may be formed by either an exchange of consideration or a mutual of obligation. Id. Therefore, a contract is deemed illusory only where it lacks both consideration and mutuality of obligation.Id.
Plaintiffs contend that the arbitration provision is illusory because Plaintiffs are required to arbitrate their disputes, while Dell has retained the right to litigate any and all of its claims. However, Defendants assert that the provision is reasonable because arbitration is an inexpensive and simple method to resolve claims which would generally involve straightforward consumer disputes. On the other hand, according to Defendants, any claims under which a consumer would be liable would involve complicated legal analysis and be better resolved before a court. As an example, Defendants offer that copyright infringement, a relatively discreet area of the law, is one such potential claim.
It is well-settled that although mutuality of obligation is necessary to create a valid contract, "equivalency of obligation" is not. Harris v. Green Tree Fin. Corp., 183 F.3d 173, 183 (3rd Cir. 1999). Accordingly, a binding agreement may be formed wherein one party is bound to submit his claims to arbitration and the other party may elect either the arbitral or judicial forum to settle its claims. Id.
In the instant case, Dell retains the option to choose either forum; namely, whether it will submit to arbitration or seek relief via litigation; the customer, on the other hand, is obliged to resolve any and all claims in binding arbitration. This apparent disparity is nonetheless acceptable and does not preclude the formation of a valid contract. Therefore, the language of the arbitration clause and the apparent disparities within that clause do not render the agreement to arbitrate unenforceable.
This Court, however, may examine the language of the entire contract, to ascertain its effect on the arbitration provision, despite the holding of Prima Paint mentioned previously. Although Prima Paint precludes judicial determination concerning contract validity, it is impossible and imprudent to interpret an arbitration provision without reference thereto.See J.M. Davidson, Inc. v. Webster, 49 S.W.3d 507, 514 (Tex. App. 2001) (examining the language of a handbook to determine its effect on an arbitration clause); In re C H News Co., 2003 Tex. App. LEXIS 393 at 5-6 (same); Dumais v. American GolfCorp., 299 F.3d 1216, 1219 (10th Cir. 2002) (same); Comb v.Paypal, Inc., 218 F. Supp.2d 1165, 1176 (N.D.Cal 2002) (in determining the validity of the arbitration agreement the court "considered the terms of the User Agreement generally and the arbitration clause in particular, as well as the totality of the circumstances"). One academic commented that it would be a great "blunder" to limit the review of the arbitration clause solely to the language of that clause. Alan Scott Rau, The ArbitrabilityQuestion Itself, 10 Am. Rev. Int'l Arb. 287, 333 (1999). Regarding this issue he stated:
 "I am referring here to one of the most bizarre and inexplicable misreadings possible: One often comes across the proposition that under Prima Paint, only an attack `limited to' the arbitration clause itself — `solely,' in isolation from the rest of agreement — is to be decided by a court. If by contrast any validity challenge `is directed to the whole agreement' — and alleges that `the entire contract [is] unenforceable' — then `arbitration is the appropriate forum. . . .' This is a gross misunderstanding of Prima Paint for the simple reason that it ignores an obvious reality: The validity of consent to arbitration may of course be impaired in a fairly straightforward way by defects in the bargaining process that `go to' the agreement to arbitrate alone — such as the highly unusual case of misrepresentation with respect to the content of an arbitration clause, or an arbitration clause that is claimed to somehow operate `unconscionably.'" Id. at 333-335. (emphasis added).
Accordingly, this Court may review the language of the entire contract to ascertain its allegedly unconscionable affect on the arbitration clause; namely, whether the contract is illusory.
Plaintiffs contend that the arbitration provision is illusory because the language of the contract fails to bind Dell in any genuine way, by permitting it to "retain the unfettered right to alter the terms of the agreement at any point in the future." (Plaintiffs' Memo in Opposition to Stay at 7.) Plaintiffs identify the following language to be illusory: "These terms and conditions are subject to change without prior written notice at any time, in Dell's sole discretion. . . ." In support of this proposition, Plaintiffs cite numerous cases involving employment contracts which were found to be illusory based on the employers' retained unilateral right to amend, alter or revoke the contracts.
Defendants contend that Plaintiffs' reading is overly harsh and "anti-consumer" and should not be read by the Court as they have. In place of Plaintiffs' reading of the contractual language, Defendants offer their interpretation; namely, that the contentious language applies only to contracts entered into at some future date. Defendants claim that the language in question simply emphasizes that additional contracts might not be governed by a customer's current contract with Dell and said language served as notification thereof.
The Thirteenth Court of Appeals of Texas found that an arbitration agreement was binding on only one party because of an "absolute right to modify or terminate" the contract. Davidson,
49 S.W.3d at 514. The employment contract in that instance provided that all disputes should be settled in binding arbitration. Id. at 510. However the following language was found by the court to create an illusory contract: "Company reserves the right to unilaterally abolish or modify any personnel policy without prior notice." Defendant in that case argued that the contract was enforceable because consideration was exchanged for the agreement; namely, continued employment at the company. However, the court was not persuaded, stating "[a]ppellee was already working for Davidson when he signed the alternative resolution dispute policy, and the implied benefit of continued employment is illusory for an at-will employee." Id.
at 514.
The same Texas Court further ruled that an arbitration agreement was supported only by an unenforceable illusory promise because one party, the employer, "reserved the right to unilaterally amend the handbook, and in so doing, has reserved the right to unilaterally amend the `Mutual Arbitration Policy/Procedures' contained in the handbook." In re C H NewsCo., 2003 Tex. App. LEXIS 393 at 8. The C H News Court acknowledged that "courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." Id. at 5. (citing Coker v. Coker,650 S.W.2d 391, 393-84 (Tex. 1983)). Nevertheless, the court found the arbitration provision to be illusory, explaining "while courts should avoid, if possible, holding a contract void on the ground of uncertainty, they have no right to eliminate terms of material legal consequence in order to uphold it." Id. at 9-10.
Again, the United States District Court for the Northern District of California also dealt with this issue involving a non-employment related contract. Comb, 218 F. Supp.2d at 1165. The court noted, that viewed in isolation, the arbitration clause contained in an online contract appeared to satisfy the mutuality of obligation requirement. Id. at 1174. However, other portions of the agreement rendered the arbitration provision illusory. The contentious language included the following: "the User Agreement `is subject to change by PayPal without prior notice (unless notice is required by law), by posting of the revised Agreement on the PayPal website." Id. Accordingly, the court found the contract to be unconscionable, observing, "[a]lthough PayPal alone may amend the User Agreement without notice or negotiation, a customer is bound to any and all such amendments for the duration of the customer's relationship with PayPal. PayPal has not shown that business realities justify such one-sidedness."Id. at 1175.
Clearly, the language in the Terms and Conditions Agreement fails to bind Defendants in any genuine way. Accordingly, this Court finds that the arbitration agreement is illusory and therefore unenforceable.
 Conclusion
This Court finds that the arbitration agreement is invalid for two reasons. First, Plaintiffs did not assent to the arbitration agreement and therefore are not bound by its terms. Second, the language of the contract is so one-sided that it creates nothing but an unenforceable illusory promise. Given the totality of the circumstances in this case, this Court will not enforce the arbitration agreement. Defendants' motions to stay proceedings and compel arbitration are denied.